**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Updike,<br><br>           Plaintiff,<br><br>v.<br><br>American Honda Motor Company Incorporated, et al.,<br><br>           Defendants. | No. CV-21-01379-PHX-DJH<br><br>**ORDER** |

This case arises from a roll-over accident Mr. James Updike, Sr. ("Decedent") was involved in while driving his 2019 Honda Talon utility terrain vehicle ("Talon"). (Doc. 1-2 at ¶ 4; Doc. 83 at 2). Plaintiff Steven Updike ("Plaintiff") and Defendant American Honda Motor Company Incorporated ("Defendant") have each filed motions for summary judgment. (Docs. 83 & 84). Plaintiff seeks partial summary judgment on Defendant's misuse affirmative defense. (Doc. 83 at 1). Defendant seeks summary judgment on Plaintiff's products liability claim. (Doc. 84). These Motions are fully briefed. (Docs. 100, 107, 112, 113). The Court denies both parties' Motions for the following reasons.[1]

**I.     Background[2]**

Plaintiff, Decedent's son, has brought this wrongful death action on behalf of Decedent and Decedent's statutory beneficiaries. (Doc. 1-2 at 13). On February 7, 2020,

---

[1] Defendant has requested oral argument in this matter. (Doc. 84). The Court denies this request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The following facts are undisputed, unless stated otherwise.

Decedent was driving his Talon in the Imperial Sand Dunes in Glamis, California. (*Id.* at ¶¶ 10-15). Decedent was driving approximately twenty to twenty-five miles per hour when he drove over a soft sand dune and became airborne as he reached its crest. (Doc. 83 at 2; Doc. 84 at 2).

During its descent, the Subject Talon pitched forward, rolled end-over-end, and came to rest on its wheels. (Docs. 83 at 2; Doc. 84 at 2). Plaintiff alleges that the Talon's rollover protection system ("ROPS") failed when the rear cross bar at the top of the roll cage directly behind and above the driver's head "snapped"[3] and several other parts of the roll cage buckled and injured Decedent. (Doc. 1-2 at ¶¶ 16–17). Decedent added several aftermarket modifications to the Talon, including a "Quick Lite whip and a Rugged Radio aerial antenna" to the cross bar that fractured. (Doc. 84 at 3; Doc. 100 at 16–17). He also added an aftermarket Pro Armor restraint harness. (Doc. 84 at 3; Doc. 100 at 6). There is much dispute as to whether these aftermarket accessories can be attributed to the failure of the ROPS and Decedent's injuries. (*See* Doc. 84 at 3; Doc. 100 at 17). Defendant denies that the Talon's ROPS contained a defect or that this defect was the proximate cause of Decedent's injuries, as Plaintiff alleges. (Doc. 84 at 7).

Stemming from this roll-over accident, Plaintiff has brought claims for negligence (Doc. 1-2 at ¶¶ 20–30), strict product liability (*id.* at ¶¶ 31–44), breach of express/implied warranty (*id.* at ¶¶ 45–48) and punitive damages[4] (*id.* at ¶¶ 49–52) against Defendant. Defendant has asserted the affirmative defense of misuse and contends that Plaintiff "materially altered" the Talon and that this alteration was not foreseeable. (Doc. 84 at 12). Plaintiff argues that there is no evidence that Decedent's aftermarket modifications to the Talon caused it to roll over or caused the ROPS to fail. (Doc. 100 at 17).

To support its claims against Defendant, Plaintiff has retained several experts in this case. (Doc. 123 at 3). He has retained Dr. Michael Markushewski to opine on the

---

[3] Defendant disputes that the cross bar "snapped," and argues that it "fractured but did not snap cleanly through." (Doc. 107 at 3 n.4 (citing Doc. 84-3 at 15 ("The rear cross member of the ROPS fractured approximately 4 inches left of center."))).

[4] Plaintiff has stipulated to the entry of judgment in Defendant's favor on his punitive damages claim. (Doc. 84 at 5 n. 4).

crashworthiness of the Talon; Dr. Andrew Rentschler to opine on the "mechanism" of Decedent's injury; and Dr. James Mason to "assess the pre-drilled design of the ROPS bar and tubing that failed during [Decedent's] rollover." (*Id.* at 7, 12, 15). Relevant here, Dr. Markushewski concludes that the Talon's roll cage failed and that the roof panel and roll cage tubing collapsed downward toward the driver occupant space. (*Id.* at 4). Dr. Rentschler opines that "[t]he injury mechanism responsible for [Decedent's] C2 nondisplaced type II/III fracture of the dens involves localized hyperextension with associated compression. This injury mechanism resulted from the contact between [Decedent's] helmeted head and the intruding roof structure/roll cage during the subject incident." (*Id.* at 12). Finally, Dr. Mason concludes that "[t]he ROPS was defective in design due to the introduction of a hole in the underside of the rear cross bar and due to the use of thin-walled tubes in its construction, i.e. tubes with too large of a diameter and too small of a wall thickness" and that "[t]he aftermarket components attached to the rear crossmember were foreseeable and likely increased the stress around the hole in the crossmember by approximately 3-4%, much less than the hole itself." (*Id.* at 16). The Court recently declined to exclude these experts as Defendant requested. (*Id.* at 11, 15 and 18).

**II.  Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the

1  governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*,
2  477 U.S. at 250.  "If reasonable minds could differ as to the import of the evidence,
3  however, a verdict should not be directed." *Id*. at 250–51 (citing *Wilkerson v. McCarthy*,
4  336 U.S. 53, 62 (1949)).

5  The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute.  *Celotex*, 477 U.S. at 323.  Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  The summary-judgment stage is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted). In fact, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather,

it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

### III. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on Plaintiff's product liability claim. (Doc. 84).

Federal district courts apply state law to products liability claims brought in federal court pursuant to diversity jurisdiction. *Adams v. Synthes Spine Co.*, 298 F.3d 1114, 1117 (9th Cir. 2002). "The doctrine of strict products liability is a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects before placing it in the chain of distribution." *State Farm Ins. Companies v. Premier Manufactured Sys., Inc.*, 142 P.3d 1232, 1234 (Ariz. Ct. App. 2006) (internal citations omitted). Strict products liability "does not rest on traditional concepts of fault." *Id.* at 1236. For instance, a strict products liability plaintiff "does not have to prove the defendant was negligent." *Id.* at 1235 (citations omitted). However, the Arizona Supreme Court has "made clear that proof of the defect alone is not sufficient for liability." *Sw. Pet Prod., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003) (citing *Readenour v. Marion Power Shovel*, 719 P.2d 1058, 1063 (Ariz. 1986)). "Instead, '[s]trict liability in tort is found only where the defective condition *causes* the product to be unreasonably dangerous.'" *Id.* (emphasis added).

In Arizona, to establish a *prima facie* case of strict products liability, a plaintiff must show that: (1) the product is defective and unreasonably dangerous; (2) the defective condition existed at the time it left defendant's control; and (3) the defective condition is the proximate cause of the plaintiff's injuries and property loss. *Dietz v. Waller*, 685 P.2d 744, 747 (Ariz. 1984); *Bonar v. General Motors Corp.*, 2009 WL 44872, * 4 (Ariz. Ct. App. 2009). Under element one, three types of defects can result in an unreasonably dangerous product: (1) manufacturers defects, (2) design defects, and (3) informational defects. *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002).

In its Complaint, Plaintiff alleges two types of defect theories: a design defect and an informational defect theory. (Doc. 1-2 at ¶ 35 ("the 2019 Honda Talon was defective as to design"), ¶ 43 (Defendant "failed to warn of the potential risks or hazards associated with riding a 2019 Honda Talon with a ROPS that was not capable of protecting the driver when using the Talon as expected and intended")). In its Motion, Defendant does not address Plaintiff's failure to warn theory and limits its arguments to Plaintiff's design defect theory. (Doc. 84).

Defendant specifically argues that Plaintiff's design defect claim cannot survive summary judgment because: (1) Plaintiff has failed to show that the Talon was defective or unreasonably dangerous; (2) he has not shown that a defect was present when it left Defendant's control; (3) there is no evidence that a defect proximately caused Decedent's injuries; and (4) Decedent misused the Talon by making material alterations to it, which were not foreseeable.[5] (Doc. 84 at 6, 12, 16).[6]

### 1. Design Defect

Defendant first argues that Plaintiff cannot meet his burden of demonstrating the existence of a defect present in the Talon because his expert, Dr. Mason, has not done any testing on the amount of force required to deform the Talon's ROPS or to break its cross bar. (Doc. 84 at 8). It further argues that Dr. Mason has not done *any* case-specific testing, so, Plaintiff has failed to show that the Talon suffered from a defect. (*Id.*) Plaintiff argues, in response, that it has set forth sufficient evidence that the Talon contained a design defect through evidence that the cross bar failed where Defendant intentionally drilled a hole in it, which significantly increased the stress on the crossbar and made its tubing easier to rip. (Doc. 100 at 11).

---

[5] Defendant also argues that, if the Court were to grant one of its six *Daubert* Motions, that Plaintiff will not have the proof he needs and it will be entitled to summary judgment. (Doc. 84 at 17). The Court did not grant any of Defendant's Daubert Motions and instead declined to exclude any of his experts, so, this argument is moot. (*See* Doc. 123).

[6] The Court notes that Defendant seeks "summary final judgment in its favor and against the plaintiff." (Doc. 84 at 1). Defendant's arguments only attack Plaintiff's strict products liability claim and do not address Plaintiff's negligence claim or his breach of warranty claim. (*See* Doc. 1-2 at ¶¶ 20–30, 45–48).

- 6 -

A defectively designed product is "one that is made as the manufacturer intended it to be but that is unreasonably dangerous." *St. Clair*, 2011 WL 5331674, at *4. A design defect claim "begins with the assertion that a manufacturer produced a product that fails to meet 'the purpose for which it is designed.' " *Jones v. Medtronic Inc*., 411 F. Supp. 3d 521, 531 (D. Ariz. 2019) (quoting *Stilwell v. Smith & Nephew, Inc*., 482 F.3d 1187, 1194 (9th Cir. 2007)). In Arizona, two tests may be used in determining whether a product is defectively designed: the Consumer Expectation Test or the Risk/Benefit Analysis Test. *See Martinez v. Terex Corp*., 241 F.R.D. 631, 641 (D. Ariz. 2007).

Under the Consumer Expectation Test, "the fact-finder determines whether the product 'failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.' " *Golonka v. General Motors Corp*., 65 P.3d 956, 962 (Ariz. Ct. App. 2003) (quoting *Dart v. Wiebe Mfg., Inc*., 709 P.2d 876, 879 (Ariz. 1985)). Expert testimony is not needed to establish a design defect under the Consumer Expectation Test because the test "focuses on the safety expectations of an ordinary consumer rather than those of an expert." *Long v. TRW Vehicle Safety Sys., Inc*., 796 F. Supp. 2d 1005, 1010 (D. Ariz. 2011) (citation omitted). The Consumer Expectation Test finds that a defective product is unreasonably dangerous when "its inherent danger exceeds the expectation of the ordinary user or consumer." *Id*. (citing *Gomulka v. Yavapai Mach. & Auto Parts, Inc*., 745 P.2d 986, 989 (Ariz. Ct. App. 1987)).

When application of the Consumer Expectation Test is "unfeasible or uncertain" courts additionally or alternatively employ the risk/benefit analysis to determine "whether a design is defective and unreasonably dangerous." *Golonka*, 65 P.3d at 963. The risk-benefit analysis test asks the fact-finder to decide, in light of relevant factors, whether "the benefits of [a] challenged design . . . outweigh the risk of danger inherent in [the] design." *Dart*, 709 P.2d at 879. If not, the design was defective and unreasonably dangerous. *Id*.

Courts apply the Consumer Expectation Test when an ordinary customer through use of a product develops "an expectation regarding the performance safety of the product." *Brethauer v. GM Corp*., 211 P.3d 1176, 1183 (Ariz. Ct. App. 2010). Indeed, this Court

has previously held, as Plaintiff notes, that "the ordinary consumer could reasonably expect, similar to a seatbelt, that [a] ROPS should restrain a passenger body within the confines of the vehicle during a rollover crash." *Thompson v. Polaris Indus. Inc.*, 2019 WL 2173965, at *2 (D. Ariz. May 17, 2019) (citing *Nance v. Toyota Motor Sales USA, Inc.*, 2014 WL 4702781, at *2 (D. Ariz. Sept. 22, 2014).

Here, Plaintiff has set forth sufficient evidence for a jury to find that the Talon's crossbar failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner through his experts. *See Long*, 796 F. Supp. 2d at 1010. First, Dr. Markushewski conducted an "inversion test" with a new Pro Armor 3-inch wide, 4-point restraint system in a machine which allows for testing of full-size vehicles in a rotational manner under a 1G environment. (Doc. 100-3 at 31). He concluded that "the seat belt provided the restraint necessary to prevent [Decedent's] neck injury in this protectable rollover incident if the roll cage d[id] not collapse." (*Id*. at 34). Markushewski concluded, in sum, that (1) the roll cage failed and the roof panel and roll cage tubing collapsed downward toward the driver occupant space, (2) Decedent's helmet was impacted by the collapsing roof and roll cage structure creating a mechanism for his ultimately fatal injuries, and (3) the roll cage structure is defectively designed and unreasonably dangerous and not suited for its intended purpose. (*See id*. at 33–34).

Next, Dr. Andrew Rentschler concluded that "[t]he intruding roof structure/roll cage contacted [Decedent's] helmet . . . [causing] type III fracture of the dens in combination with failure of the anterior longitudinal ligament and widening of the C1-2 articulations as noted in the available diagnostic studies." (Doc. 123 at 13). He also testified at his deposition that "absent deformation or crush damage to the ROPS, [Decedent] would not have sustained the cervical injuries that he did as a result of the incident." (*Id*. at 14).

Finally, Dr. Mason concluded in his report that "[t]he ROPS was defective in design due to the introduction of a hole in the underside of the rear cross bar and due to the use of thin-walled tubes in its construction, i.e. tubes with too large of a diameter and too small of a wall thickness" and that "[t]he aftermarket components attached to the rear

crossmember were foreseeable and likely increased the stress around the hole in the crossmember by approximately 3-4%, much less than the hole itself." (Doc. 123 at 16).[7]

Reviewing this evidence collectively, the Court finds that Plaintiff has set forth sufficient evidence form which a jury could concluded that the Talon suffered from a defect which caused Decedent's injuries. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–86. Under the Consumer Expectation Test, Plaintiff has set forth facts to show that the Talon's ROPS failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner. *Golonka*, 65 P.3d at 962. Indeed, consumers have developed a reasonable expectation that a vehicle's ROPS should restrain a passenger's body within the confines of the vehicle during a rollover crash. *Thompson*, 2019 WL 2173965, at *2 ("the ordinary consumer could reasonably expect, similar to a seatbelt, that ROPS should restrain a passenger body within the confines of the vehicle during a rollover crash.").

Defendant argues this case is akin to *Kostic v. AutoZone Parts Inc.*, 2021 WL 461939 (D. Ariz. Feb. 9, 2021). It is not. *Kostic* dealt with an informational defect theory, not a design defect theory. *See id.* at *2. As well, unlike the plaintiff in *Kostic*, Plaintiff has furnished evidence of a defect here. In *Kostic*, the court found that the plaintiff failed to provide "any evidence" that the product lacked warnings and instructions ordinarily included with it when it left the manufacturers hands. *See id.* Here, Plaintiff has furnished evidence which demonstrates that the ROPS failed due to its defective design. (Doc. 100 at 11). Plaintiff's expert, Dr. Mason concluded that the Talon's ROPS was defective in design because of the introduction of a hole in the underside of the rear cross bar." (Doc. 123 at 16). Plaintiff also advances that Defendant's own expert, Mr. Cooper, admitted in

---

[7] While Dr. Mason did not perform any of his own testing, the Court found that "the admissibility of expert testimony 'does not depend on the expert personally performing testing.' " (Doc. 123 at 18 (citing *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1219 (D. Mont. 2015)). The Court also concluded that "Dr. Mason is qualified to testify on the failure of the Talon's crossbar generally and [it] will not exclude him from testifying" and noted that his testimony is "is ripe for rigorous cross-examination, not exclusion." (*Id.* (citing *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."))).

- 9 -

his deposition that "[a] hole of any kind creates a stress concentration . . . So the contribution to the strength of that particular member is an increase in the localized stress by a factor of 3." (Doc. 100-2 at 69–70). In simpler terms, Dr. Cooper explained that "by looking at the little tabs that are on almost every package that you want to get into these days [there] are a stress concentration, which is a point where you can rip the top of the bag open." (*Id*. at 70). The experts in this case agree that the hole in the cross bar of the Talon's ROPS weakened it, so, Plaintiff has set forth evidence that the Talon contained a defect—unlike the plaintiff in *Kostic. Cf. Kostic*, 2021 WL 461939 at *2.

Because Plaintiff has set forth evidence that the ROPS collapsed downward toward Decedent during the roll-over and that this collapse caused his injuries, contrary to what a reasonable consumer would expect, Plaintiff has satisfied the Consumer Expectation Test. *Martinez*, 241 F.R.D. at 641. Furthermore, the fact that Decedent added aftermarket parts to the roof of his Talon does not prevent Plaintiff from satisfying this test because he has set forth credible evidence that the modifications he installed were foreseeable and only increased the stress to the crossmember by three to four percent, so, he has, at the very least, shown that a genuine dispute of fact exists as to this issue. *Celotex Corp.*, 477 U.S. at 322–23.

**2.  Whether the Defective Condition Existed at the Time it Left Defendant's Control**

Defendant next argues that Plaintiff cannot show that a defect was present when the Talon left its control. (Doc. 84 at 14 n.8).

A plaintiff is not required to show that a defendant "*caused* a specific defect while in control of the product," they must only show that "some *defect* existed when the product passed from defendant's control to plaintiff." *Dietz*, 685 P.2d at 747 (emphasis in original). "[N]o specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the accident was caused by a defect." *Id*.

Here, Plaintiff has put forth evidence that the Talon's ROPS suffered from a defect which existed when it left Defendant's control. Dr. Mason concluded that the introduction

of a hole in the underside of the rear cross bar resulted in a defect to the Talon's ROPS. (Doc. 123 at 16). He also stated that "[t]he introduction of the hole made the cross bar three times weaker than it was without the hole. The logical alternative designs include eliminating the hole or moving the hole to the top or side of the tube. This is basic engineering." (Id. at 17; Doc. 84-10 at 6). And Dr. Markushewski concluded that the roll cage failed and the roof panel and roll cage tubing collapsed downward toward the driver occupant space. (Doc. 123 at 4).

Furthermore, changes to a product have not prevented a showing that a defect existed where, as here, it could be reasonably inferred that the defect was the result of a structural problem. *See Dietz*, 685 P.2d at 747. Dr. Mason's testimony establishes as much. (*See* Doc. 123 at 17). While "reasonable minds could differ over the conclusions to be drawn from the evidence presented," *see Anderson*, 477 U.S. at 250, this evidence could allow a reasonable jury to infer that the Talon's ROPS suffered from a defect. *Dietz*, 685 P.2d at 747. Thus, Plaintiff has set forth specific facts showing that there is a genuine issue for trial as to this element. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

### 3. Proximate Cause

Defendant finally argues that Plaintiff cannot show that the alleged defect was the proximate cause of Decedent's injuries. (Doc. 84 at 7).

"The proximate cause of an injury is defined in Arizona as 'that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces and injury, and without which the injury would not have occurred.' " *Long*, 796 F. Supp. 2d at 1011 (quoting *Shelburg v. City of Scottsdale Police Dep't*, 2010 WL 3327690, at *9 (D. Ariz. Aug. 23, 2010)). "Ordinarily, what constitutes the proximate cause of any injury is a question of fact. However, the jury is not entitled to make a decision absent a proper evidentiary foundation." *D'Agnese v. Novartis Pharms. Corp*., 952 F. Supp. 2d 880, 890 (D. Ariz. 2013) (quoting *Gebhardt v. Mentor Corp*., 191 F.R.D. 180, 184 (D. Ariz. 1999)). In other words, "there must be some evidentiary foundation of proximate cause before the question may be turned over to the jury." *Walsh v. LG Chem Am*., 2021 WL 5177864, at

*5 (D. Ariz. Nov. 8, 2021) (citation omitted).

Here, there is, at the very least, some evidence that a defect in the Talon's design proximately caused Decedent's injuries and death. *Id*. As stated above, Dr. Markushewski concluded, in sum, that (1) the roll cage failed and the roof panel and roll cage tubing collapsed downward toward the driver occupant space, (2) Decedent's helmet was impacted by the collapsing roof and roll cage structure creating a mechanism for his ultimately fatal injuries, and (3) the roll cage structure was defectively designed and unreasonably dangerous and not suited for its intended purpose. (*See* Doc. 100-3 at 33–34). Dr. Rentschler further concluded that "[t]he intruding roof structure/roll cage contacted [Decedent's] helmet . . . [caused] type III fracture of the dens in combination with failure of the anterior longitudinal ligament and widening of the C1-2 articulations as noted in the available diagnostic studies." (Doc. 123 at 13). He also testified at his deposition that "absent deformation or crush damage to the ROPS, [Decedent] would not have sustained the cervical injuries that he did as a result of the incident." (*Id*. at 14). This evidence sets forth specific facts showing that there is a genuine issue for trial as to the proximate cause element. *Dietz*, 685 P.2d at 747; *Anderson*, 477 U.S. at 250.

In sum, Plaintiff has set forth sufficient facts to establish a *prima facie* case of strict products liability as he has shown that a reasonable juror could find that (1) the Talon was defective and unreasonably dangerous; (2) the defective condition existed at the time it left Defendant's control; and (3) the defective condition was the proximate cause of Decedent's injuries and death. *See Dietz*, 685 P.2d at 747; *Anderson*, 477 U.S. at 250 (stating that the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial."). So, Defendant is not entitled to judgment as a matter of law on Plaintiff's strict products liability claim.

**4.     Defendant's Affirmative Defense of Misuse**

Defendant also argues that it is entitled to summary judgment because Plaintiff materially altered the Talon and that this alteration was unforeseeable, which would establish its misuse defense. (Doc. 84 at 12–13). Defendant essentially argues that Plaintiff

misused the Talon by installing the Quick Lite whip and a Rugged Radio aerial antenna to the cross bar and improperly installing and/or using the aftermarket harness. (*Id*. at 14). Defendant specifically argues that these modifications proximately caused Decedent's injuries because (1) the harness failed to properly restrain Decedent during the roll over and (2) the mislocated whip "applied a concentrated load to the cross member during the ROPS-to-ground contact that likely **contributed** to its fracture." (*Id*.) (emphasis added).

Arizona law provides that a defendant in a strict products liability action shall not be liable *if it proves* that "[t]he proximate cause of the incident giving rise to the action was an alteration or modification of the product that was not reasonably foreseeable, made by a person other than the defendant and subsequent to the time the product was first sold by the defendant." A.R.S. § 12-683(2). Similarly, a defendant can also shield themselves from liability by proving that the proximate cause of the plaintiff's injury was (1) "a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable *or* [(2)] was contrary to any express and adequate instructions or warnings appearing on or attached to the product . . ." A.R.S. § 12-683(3) (emphasis added); *see also Monje v. Spin Master Inc*., 2015 WL 13648554, at *6 (D. Ariz. July 24, 2015), *aff'd*, 679 Fed. Appx. 535 (9th Cir. 2017). Arizona law defines a reasonably foreseeable use as one "that would be expected of an ordinary and prudent purchaser, user or consumer and that an ordinary and prudent manufacturer should have anticipated." A.R.S. § 12-681(8). "[S]ome abnormal, or unintended uses will not constitute a legal misuse of the product, if they are reasonably foreseeable." *Kavanaugh v. Kavanaugh*, 641 P.2d 258, 263 (Ariz. Ct. App. 1981) (citations omitted). As a general rule, whether misuse, modification, or alteration of a product is reasonably foreseeable is a question of fact for the jury. *See id.* (misuse); *Piper v. Bear Med. Sys*., 883 P.2d 407, 412–13 (Ariz. Ct. App. 1993) (alteration or modification).

Here, Defendant has not "affirmatively demonstrate[d]" that a reasonable jury could *only* find for it on the defense of misuse, in large part, because of the opinions of Dr. Mason as well as concessions its own expert, Mr. Eddie Cooper, made during his deposition. *See*

*Soremekun*, 509 F.3d at 984.  Dr. Mason concluded in his expert report that:

> The ROPS was defective in design due to the introduction of a hole in the underside of the rear cross bar and due to the use of thin-walled tubes in its construction, i.e. tubes with too large of a diameter and too small of a wall thickness. ***The aftermarket components attached to the rear crossmember were foreseeable*** and likely increased the stress around the hole in the crossmember by approximately 3-4%, much less than the hole itself.

(Doc. 123 at 16).  This opinion essentially rebuts the conclusion that the modifications were the cause of the cross member snapping or fracturing because the modifications only increased the stress to it by three or four percent—"***much less***" than the predrilled hole. (*See id*.)

Dr. Mason further states that "[t]he aftermarket components attached to the rear crossmember were foreseeable."  (Doc. 123 at 16).  As well, Mr. Cooper admitted in his deposition that Decedent was using the Talon as it was intended and foreseeable.  (Doc. 83-7 at 4).  This evidence prevents a finding that Decedent was misusing the Talon because, to prove misuse, Defendant must affirmatively demonstrate that no reasonable trier of fact could find other than for it.  *See* A.R.S. § 12-683(3); *Soremekun*, 509 F.3d at 984.

Furthermore, Plaintiff has also set forth evidence that Decedent's modifications were not contrary to any express instructions or warnings appearing on or attached to the product—which also undermines Defendant's entitlement to judgment on its misuse defense.  A.R.S. § 12-683(3).  Another of Plaintiff's experts, Mr. Mark Cannon, was engaged to "evaluate and comment on the reports submitted by [Defendant's experts] Dr. Fowler and Dr. Dorris on behalf of [Defendant]" and "address the issue of information and warnings provided on the Honda Talon and the contrast between the findings in Drs. Fowler's and Dorris' reports."  (Doc. 123 at 15).  Mr. Cannon concluded in his rebuttal report[8] that the "[a]ntenna and flagpole bracket mounting are not addressed in these

---

[8] The Court found in its Order dismissing Defendant's Motions to Exclude Plaintiff's Experts that "since Mr. Cannon is designated as a rebuttal expert, he cannot testify in Plaintiff's case-in-chief or at all unless and until Defendant's experts testify as to the opinions for which he has been designated as a rebuttal expert."  (Doc. 123 at 21).  The Court will consider this evidence because "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Savage*

warnings and the information about the bracket, as cited by Dr. Fowler, does not comport with the warnings format extolled by Dr. Dorris." (*Id*. at 15–16). Mr. Cannon also noted that "[i]f the flagpole mounting information is as critical as Dr. Fowler describes, then it needs to follow Dr. Dorris' recommended format regarding warnings relative to safety. And by Dr. Dorris' reckoning, the flagpole bracket information in the manual is deficient and not reasonable nor appropriate." (*Id*. at 18). These opinions support Plaintiff's contentions that (1) the ROPS' failure was due to a product defect, not the installation of aftermarket parts; (2) the installation of these aftermarket parts was foreseeable; and (3) the warnings against such modification were deficient. (*See id*. at 15–18). A misuse defense is only available when an alteration or modification of the product is concerned if the modification was "[t]he ***cause*** of the incident giving rise to the action." A.R.S. § 12-683(2) (emphasis added). The opinions of Plaintiff's experts demonstrate that there are genuine issues of material fact regarding the cause of the incident here.

Moreover, "[d]etermining the credibility of witnesses, resolving evidentiary conflicts, and drawing reasonable inferences from proven facts" falls within the exclusive province of the jury. *Taylor v. Cnty. of Pima*, 2023 WL 2652602, at *3 (D. Ariz. Mar. 27, 2023) (quoting *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012)). Defendant's experts and Plaintiff's experts each establish facts for and against misuse. For the Court to find one way, or the other, on this issue, the Court would necessarily have to make credibility determinations or weigh conflicting evidence—which, again, the Court cannot do at the summary judgment stage. *See T.W. Electric Service*, 809 F.2d at 630–31. Indeed, whether the misuse, modification, or alteration of a product is reasonably foreseeable is generally a question of fact for the jury—and this question should be decided by the jury in this case—not the Court. *See Kavanaugh*, 641 P.2d at 263.

In sum, Defendant has not demonstrated that it is entitled to judgment as a matter of law on Plaintiff's strict product liability claim because there are genuine issues of material

---

*v. City of Whittier*, 689 F. Supp. 3d 781, 794 (C.D. Cal. 2023) (citation omitted). "[W]hen evidence is not presented in an admissible form in the context of a motion for summary judgment, but it *may* be presented in an admissible form at trial, a court may still consider that evidence." *Id*. (emphasis added).

- 15 -

fact showing that this claim is ripe for trial. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23

### IV. Plaintiff's Motion for Summary Judgment

Next, the Court will address Plaintiff's Motion for Partial Summary Judgment. Plaintiff seeks judgment on a narrow issue: Defendant's affirmative defense of misuse. (Doc. 83 at 1). Plaintiff argues that, although misuse is an available affirmative defense under A.R.S. § 12-683(3), it is not available in this case because the Talon's rollover was foreseeable. (*Id*. at 6 (citing *Cota v. Harley Davidson*, 141 Ariz. 7, 684 P.2d 888 (Az. Ct. App. 1984)). Defendant argues that Arizona law provides for a misuse defense here because Decedent acted contrary to the express and adequate Talon instructions and his misuse was not reasonably foreseeable. (Doc. 107 at 8). Interestingly, even though Defendant also moved for summary judgment on this ground, it argues that there are genuine issues of material fact which prevent judgment as a matter of law on the issue of misuse. (*Id*. at 7).

As stated above, Arizona law provides that a defendant in a strict products liability action shall not be liable ***if it proves*** that "[t]he proximate cause of the incident giving rise to the action was an alteration or modification of the product that was not reasonably foreseeable, made by a person other than the defendant and subsequent to the time the product was first sold by the defendant." A.R.S. § 12-683(2). A defendant can also shield themselves from liability by proving that the proximate cause of the plaintiff's injury was (1) "a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable *or* [(2)] was contrary to any express and adequate instructions or warnings appearing on or attached to the product . . ." A.R.S. § 12-683(3) (emphasis added); *see also Monje*, 2015 WL 13648554, at *6. As a general rule, whether misuse, modification, or alteration of a product is reasonably foreseeable is a question of fact for the jury. *See id.* (misuse); *Piper*, 883 P.2d at 412–13.

Here, the Court agrees with Defendant that Plaintiff cannot show he is entitled to judgment as a matter of law on misuse because Defendant has set forth evidence that

Decedent's modifications to the Talon could have caused the cross bar to fracture. The proposed expert testimony shows that the proximate cause of Decedent's injuries, whether it was the modifications or a defect, is ripe for trial.  For example, Defendant's expert, Dr. Michael Carhart, noted that "the original equipment restraint system of the [Talon] had been removed prior to the subject pitch-over crash and replaced with an aftermarket four-point restraint *that was not properly installed or adjusted* at the time of the crash."  (Doc. 107-9 at 12) (emphasis added).  Dr. Fowler also opines that Decedent's installation of a "Quick Lite mounting bracket" which was "bolted and welded to the center roof attachment tab . . . applied a concentrated load to the rear cross member during the ROPS-to-ground contact."  (Doc. 107-3 at 15).  Fowler further states that "[t]he Quick Lite whip mounted to the rear roof bracket and the base of the Rugged Radio aerial antenna would have applied a concentrated load to the cross member *during the ROPS-to-ground contact*."  (*Id*. at 26) (emphasis added).  Dr. Fowler also notes that Defendant provides a "flagpole bracket low on the C-pillar which, had it been used, would not generate the same loading patterns to the ROPS in the advent of a tip over as occurred in the subject incident."  (Doc. 107-3 at 21).  Defendant expressly warns users that accessories can add extra weight to the ROPS, which reduces the overall weight that the ROPS is capable of bearing.  (Doc. 107-5 at 12 ("Modifying your vehicle or using non-Honda accessories can make it unsafe . . . You should also be aware that accessories add weight, reducing the amount of cargo and total weight you can carry, and can raise the vehicle's center of gravity, increasing the risk of a rollover.")).

When juxtaposed to Plaintiff's evidence, Defendant's evidence demonstrates that there are genuine fact issue for trial.  *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).  As previously discussed, Dr. Mason states that the modifications Decedent installed were foreseeable and that they did not cause the cross bar to fail during the roll over. (Doc. 123 at 16).  Instead, Dr. Mason opines that the cross bar failed because the hole that was drilled in the middle of it made it weaker.  (*Id*.)

As demonstrated, the parties' expert testimony in this case is in direct conflict, so,

the applicability of Defendant's misuse defense will require the fact-finder to make credibility determinations as to these experts. This responsibility falls to a jury —not the Court. *See Kavanaugh*, 641 P.2d at 263. Thus, the Court declines to enter judgment in Plaintiff's favor on the issue of misuse.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 83) and Defendant's Motion for Summary Judgment (Doc. 84) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's punitive damages claim contained in Count IV of his Complaint (Doc. 1-2 at ¶¶ 49–52) is **DISMISSED**, as the parties have stipulated to this dismissal.

**IT IS FINALLY ORDERED** that considering Plaintiff's remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 10 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 23rd day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge