**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Updike,<br><br>            Plaintiff,<br><br>v.<br><br>American Honda Motor Company Incorporated, et al.,<br><br>           Defendants. | No. CV-21-01379-PHX-DJH<br><br>**ORDER** |

This case arises from a roll-over accident Mr. James Updike, Sr. ("Decedent") was involved in while driving his 2019 Honda Talon utility terrain vehicle ("Talon"). (Doc. 124 at 1). Plaintiff Steven Updike ("Plaintiff") and Defendant American Honda Motor Company Incorporated ("Defendant") have each filed Motions in Limine. (Docs. 149-152, 162-163). The Motions are fully briefed. (Docs. 156-159, 166-167). The Court will address each Motion in turn.

**I.     Background**

Plaintiff, Decedent's son, has brought this wrongful death action on behalf of Decedent and Decedent's statutory beneficiaries. (Doc. 1-2 at 13). On February 7, 2020, Decedent was driving his Talon in the Imperial Sand Dunes in Glamis, California. (*Id*. at ¶¶ 10-15). Decedent was driving approximately twenty to twenty-five miles per hour when he drove over a soft sand dune and became airborne as he reached its crest. (Doc. 124 at 2).

During its descent, the Subject Talon pitched forward, rolled end-over-end, and

came to rest on its wheels. (Docs. 83 at 2; Doc. 84 at 2). Plaintiff alleges that the Talon's rollover protection system ("ROPS") failed when the rear cross bar at the top of the roll cage directly behind and above the driver's head "snapped" and several other parts of the roll cage buckled and injured Decedent. (*Id*.) Decedent added several aftermarket modifications to the Talon, including a "Quick Lite whip and a Rugged Radio aerial antenna" to the cross bar that fractured. (*Id*). He also added an aftermarket Pro Armor restraint harness. (*Id*). Defendant has argued that these aftermarket accessories can be attributed to the failure of the ROPS and Decedent's injuries. (*Id*).

Stemming from this roll-over accident, Plaintiff has brought claims for negligence (Doc. 1-2 at ¶¶ 20–30), strict product liability *id*. at ¶¶ 31–44), breach of express/implied warranty (*id*. at ¶¶ 45–48) and punitive damages (*id*. at ¶¶ 49–52) against Defendant. However, the parties have stipulated to dismiss every count besides the strict liability count. (Doc. 160; Doc. 84 at 5 n. 4). This count, as well as Defendant's affirmative defense of misuse, are now ripe for trial.

**II.    Legal Standard**

    **A.    Motions in Limine**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Motions in limine are "entirely within the discretion of the [trial] Court." *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42).

However, motions in limine are "provisional" in nature. *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036, 1047 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds*, 613 F. App'x 610 (9th Cir. 2015). The Court issues its rulings on these motions based on the record currently before it, therefore, rulings

on such motions "are not binding on the trial judge [who] may always change [ her] mind during the course of a trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

### B. Relevance

Federal Rule of Evidence 401[1] provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402. However, all relevant evidence is subject to Rule 403's balancing test. That is, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### C. Expert Witnesses

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). A qualified expert may testify based on their "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence." Fed. R. Evid. 702(a). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.* The expert's testimony must also be based on "sufficient facts or data," be the "product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." *Id.* at 702(b)–(d). The trial court must first assess whether the testimony

---

[1] Except where otherwise noted, all Rule references are to the Federal Rules of Evidence.

- 3 -

is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and that the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

That the opinion testimony aids, rather than confuses, the trier of fact goes primarily to relevance. *See Temple v. Hartford Ins. Co. of Midwest*, 40 F.Supp. 2nd, 1156, 1161 (D. Ariz. 2014) (citing *Primiono v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, an expert witness, "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (internal citations omitted); *see also* Fed. R. Evid. 704.

**III. Discussion**

Defendant has filed four Motion in Limine seeking to exclude: (1); evidence of decedent on his deathbed or his funeral (Doc. 149); (2) medical bill evidence and travel expenses associated with Decedent's medevac from the crash site (Doc. 150); (3) lay witnesses from impermissibly offering expert opinions (Doc. 151); and (4) exclude advertising, marketing and demonstration videos and materials (Doc. 152).

Plaintiff has filed two Motions in Limine seeking to preclude: (1) argument or evidence that Decedent used the Talon in a manner that was not appropriate or foreseeable, i.e., that he misused the Talon (Doc. 162); and (2) witnesses from testifying to what they perceived upon arriving at the crash moments after it had happened (Doc. 163).[2] The Court will address each Motion in turn.

**1.    Defendant's First Motion in Limine (Doc. 149)**

Defendant seeks to preclude evidence of cumulative, irrelevant and inflammatory materials including (1) photographs and videos of Decedent in the hospital and of his

---

[2] The Court will rule on Plaintiff's second Motion in Limine (Doc. 163) at the Final Pretrial Conference.

1  casket; (2) letters and voicemails from Decedent to his family (3) transcripts and audio-
2  recordings of eulogies given at Decedent's funeral; and (4) portions of the funeral montage.
3  (Doc. 149). Defendant avers that the evidence is irrelevant, and because Plaintiff will
4  introduce testimony to support the damages claim, the probative value of the evidence is
5  outweighed by its prejudicial effect. (*Id*. at 2). Plaintiff asserts that such evidence is
6  relevant as "[t]he picture of Jim in the hospital will help the jury to fully understand the
7  terrible scene that Jim's family found themselves in, following the incident."
8  (Doc. 156 at 2). Plaintiff states that it is directly relevant to the issues of his damages and
9  its probative value is not outweighed by substantial prejudice. (*Id*). Furthermore, Plaintiff
10 asserts that the pre-death communications between Decedent and his children and the
11 eulogies given are also relevant to show damages for anguish, sorrow, mental suffering,
12 pain and shock. (*Id*. at 3).

13  Plaintiff has made a claim for damages including pain and suffering. Plaintiff is
14 entitled to introduce evidence of the pain and suffering endured as a result of the incident
15 resulting in decedent's death. However, each item of evidence must be probative of the
16 damages sought. Cumulative evidence, though probative, may become substantially
17 prejudicial to the Defendant, and therefore is inadmissible. Fed. R. Evid. 403. Plaintiff's
18 witness list includes many family members who intend to testify about the impact of losing
19 a father and husband. That testimony will likely include the impact of seeing him in a
20 hospital bed, the decision to have him removed from life support, in addition to the
21 premature loss to his dependents and the results therefrom.

22  This testimony, along with voice audio, photographs of the decedent in a hospital
23 bed, his casket and eulogies vier into inflaming the jury—especially when witnesses will
24 testify as to his loss. Therefore, Plaintiff will be precluded from introducing photographs
25 of the decedents casket, eulogy transcripts and videos. *See* Fed. R. Evid. 403.

26  As for letters and audio recordings to family members made prior to decedents
27 passing, at the Final Pretrial Conference, Plaintiff shall inform the Court when the letters
28 were authored and the audio recordings made, their respective content and how each are

probative of the damages claim and their authenticity.

Regarding the hospital bed photograph, it may be probative of the injuries sustained and treatment received. It may be probative of the mental anguish experienced by Plaintiff and thus, relevant to the damages claim. At the Final Pretrial Conference, the Court will hear from Plaintiff how he intends to use the photograph, through which witnesses it will be introduced and determine whether the hospital bed photo may be introduced into evidence.

**IT IS ORDERED**, **granting**, **in part**, the Defendant's First Motion in Limine (Doc. 149). The Motion is granted as to photographs and videos of James Updike, Sr.'s casket; transcripts and audio-recordings of eulogies given at Decedent's funeral; and any portions of the funeral montage.

The Court will address the admissibility of the photograph of James Updike, Sr.' in the hospital bed and letters and voicemails from Decedent to his family at the Final Pretrial Conference.

**2.     Defendant's Second Motion in Limine (Doc. 150)**

Defendant seeks an order precluding medical expenses "which plaintiff cannot prove are reasonable , and of all other economic damages sustained, if at all, by the estate and not the statutory beneficiaries." (Doc. 150). Defendant asserts that Plaintiff "cannot prove the medical expenses he seeks to recover are reasonable and necessary." (*Id*. at 2). Plaintiff asserts that it intends to establish the reasonableness and necessity of the medical care and medical expenses, including "recovering medical costs incurred while seeking a second opinion[.]" (Doc. 157).[3] The Court will deny the Motion.

Defendant asserts that Plaintiff cannot show that $91,128.40 to have the decedent flown to St. Joseph's Hospital was not a reasonable and necessary medical expense as evidenced by the medical insurance denial of coverage for the transportation because the Decedent had "already gone through the process." (*Id.*) In addition to the insurance denial of coverage, Defendant also proffers deposition testimony of a family member who

---

[3] Plaintiff's response appears to indicate the intent to seek damages only for the statutory beneficiaries, so, the Court need not address that issue.

confirms "we went through the process with the doctors in Palm Springs. Then we chose to, on our dime, fly him to Phoenix. His insurance wouldn't cover it because he had already gone through the process." (Doc. 150-1 at 8). She also indicated that the family did so to seek a second opinion. (*Id.* at 5).

Plaintiff asserts that "nothing in the Wrongful Death statute or Arizona law prevents a family from recovering medical costs incurred while seeking a second opinion." (Doc. 157 at 3). Yet, all medical expenses sought must be probative and relevant to the medical care received. *Larsen v. Decker*, 196 Ariz. 239 (App. 2000). Therefore, the Defendant may cross-examine treating physician witnesses to elicit testimony of the reasonable and necessary costs associated with the decedents transportation from Palm Springs to Phoenix. Defendant may also introduce evidence, upon proper foundation laid, that the request for reimbursement was denied as unreasonable and unnecessary.

**IT IS ORDERED** that Defendant's second Motion in Limine (Doc. 150) is **DENIED**.

### 3. Defendant's Third Motion in Limine (Doc. 151)

Defendant argues that the Court should preclude lay witnesses from "impermissibly offering opinions (1) on defect and causation issues, including opinions about the softness of the sand at the crash scene in the Imperial Sand Dunes in Glamis, California ("Glamis"), which should be reserved for experts; and (2) on the strength and performance of either original equipment ('OE') or aftermarket [ROPS]." (Doc. 151 at 1). Plaintiff counters that the lay witnesses ought to be allowed to offer opinions rationally based on their perception. (Doc. 158 at 2 (citing Fed. R. Evid. 701(a))). Specifically, Plaintiff argues that some of its witnesses should be allowed to testify regarding the strength of the Talon's ROPS and their expectations of a ROPS because they are ordinary consumers as well as the softness of the sand at the crash site as they experienced it. (*Id*).

Indeed, as the parties have noted, lay witnesses may testify "in the form of an opinion" if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based

on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1101 (D. Ariz. 2019) (quoting Fed. R. Evid. 701 advisory committee's notes to 2000 Amendments). Lay opinion testimony "is not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Id*. (citations omitted).

Plaintiff states that some of the purported witnesses were riding their UTVs and walking in the sand dunes, so, they can testify to how the sand felt that day: soft. (Doc. 158 at 2). The Court agrees. The witnesses can describe the sand as they experienced it on the day of the accident as that is testimony rationally based on their perception. Fed. R. Evid. 701. Furthermore, if they can lay the proper foundation, they can also testify to their expectations of a UTV's ROPS. *See* Fed. R. Evid. 701. However, the witnesses may not testify to the effect the softness of the sand would have on a crash as that testimony is expert testimony. Fed. R. Evid. 701(c); 702.

**IT IS ORDERED** that Defendant's third Motion in Limine (Doc. 151) is **DENIED**.

### 4.      Defendant's Fourth Motion in Limine (Doc. 152)

Defendant seeks an order precluding Plaintiff from introducing "evidence of advertising, marketing, and demonstration materials for the Honda Talon 1000R ("Talon") including, but not limited to, press releases, videos, screenshots from videos, or other still photographs." (Doc. 152). Defendant states that Plaintiff "will offer various marketing evidence including videos and press releases to imply that the Talon was a dangerous vehicle that was unsafe for its expected and intended use." (Id. at 3). Furthermore, Defendant asserts that Plaintiff cannot establish authenticity as to some of the advertisements, videos and photos. (*Id*.)

Plaintiff asserts that the evidence it seeks to introduce is probative and relevant "to

the issue of consumer expectations [and] Honda plays an active role in setting those expectations through the release of their advertising material." (Doc. 159 at 3). Plaintiff further states that the advertisements are self-authenticating because they contain trade inscriptions. (*Id*. at 1).

The Court agrees that some photographs and advertisements of the Talon are probative and relevant to consumer expectations. However, admissibility of each item sought admitted must meet the requirements of Rule 901(a). See Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Moreover, Plaintiff must lay proper foundation that the decedent was aware of the advertisement and/or video and/or photograph sought to be introduced. It is noteworthy that the advertisement Defendant refers to is a 2021 ad, and the incident at issue here occurred in 2019. Therefore, Plaintiff shall specifically identify each advertisement/video/photo it intends to introduce and how its authenticity is established prior to its introduction. Finally, the Court will determine whether Plaintiff's introduction of such evidence becomes cumulative resulting in prejudice to the Defendant.

**IT IS ORDERED** that Defendant's Fourth Motion in Limine (Doc. 152) is **DENIED**.

### 5. Plaintiff's First Motion in Limine (Doc. 162)

Plaintiff seeks to exclude any evidence or argument of misuse. (Doc. 162). Defendant has asserted the affirmative defense of misuse and contends that Plaintiff "materially altered" the Talon and that this alteration was not foreseeable. (Doc. 124 at 2). Both parties previously sought summary judgment on this issue, but the Court denied these requests as disputes of material fact precluded such a finding. (*Id*. at 15-16). Plaintiff essentially seeks reconsideration of its argument that the Court should enter summary judgment on Defendant's misuse defense. (*See* Doc. 162 at 2–3). The Court will not grant such a request as it is improper.

Arizona law provides that a defendant in a strict products liability action shall not

be liable *if it proves* that "[t]he proximate cause of the incident giving rise to the action was an alteration or modification of the product that was not reasonably foreseeable, made by a person other than the defendant and subsequent to the time the product was first sold by the defendant." A.R.S. § 12-683(2). Similarly, a defendant can also shield themselves from liability by proving that the proximate cause of the plaintiff's injury was (1) "a use or consumption of the product that was for a purpose, in a manner or in an activity other than that which was reasonably foreseeable *or* [(2)] was contrary to any express and adequate instructions or warnings appearing on or attached to the product . . ." A.R.S. § 12-683(3) (emphasis added); *see also Monje v. Spin Master Inc*., 2015 WL 13648554, at *6 (D. Ariz. July 24, 2015), *aff'd*, 679 Fed. Appx. 535 (9th Cir. 2017). Arizona law defines a reasonably foreseeable use as one "that would be expected of an ordinary and prudent purchaser, user or consumer and that an ordinary and prudent manufacturer should have anticipated." A.R.S. § 12-681(8). As a general rule, whether misuse, modification, or alteration of a product is reasonably foreseeable is a question of fact for the jury. *See Kavanaugh v. Kavanaugh*, 641 P.2d 258, 263 (Ariz. Ct. App. 1981) (misuse); *Piper v. Bear Med. Sys*., 883 P.2d 407, 412–13 (Ariz. Ct. App. 1993) (alteration or modification).

At the summary judgment stage, Plaintiff argued that the affirmative defense of misuse is not available in this case because the Talon's rollover was foreseeable. (Doc. 83 at 6 (citing *Cota v. Harley Davidson*, 141 Ariz. 7, 684 P.2d 888 (Az. Ct. App. 1984)). Plaintiff essentially recycles this argument in its Motion in Limine. (*See* Doc. 162).

On the issue of modification, the Court has already found that "Defendant has set forth evidence that Decedent's modifications to the Talon could have caused the cross bar to fracture[,]" so, it has "demonstrate[d] that there are genuine fact issue for trial." (Doc. 124 at 17 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(e)). The Court will not reconsider this issue here because, as Defendant points out, seeking summary judgment in a motion in limine is improper. *See IceMOS Tech. Corp. v. Omron Corp*., 2020 WL 1083817, at *3 (D. Ariz. 2020) (denying motion in limine where "plaintiff's request to preclude evidence . . . is an improper belated partial summary

judgment motion"). Furthermore, it runs afoul of this Court's reconsideration procedures. *See* LRCiv 7.2(g)(1) ("[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence . . . Failure to comply with this subsection may be grounds for denial of the motion.").

On the issue of Decedent's operation of the Talon, Plaintiff's Rule 401 and 403 arguments fail because the Court has already found that the issue of misuse is an issue for the jury; so, evidence and testimony concerning misuse is relevant. *See* Fed. R. Evid. 401; *see also Thompson v. Polaris Indus. Inc*., 2019 WL 2173965, at *3 (D. Ariz. May 17, 2019) ("Therefore, under Arizona law, Plaintiffs' conduct is relevant to the defenses of assumption of the risk and product misuse.") (citations omitted). The Court also finds that this relevant evidence is highly probative because it goes directly to Defendant's affirmative defense of misuse and therefore is not substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403.

Accordingly,

**IT IS ORDERED** that Plaintiff's first Motion in Limine (Doc. 162) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Second, Third and Fourth Motions in Limine (Docs. 150–152) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's First Motion in Limine (Doc. 149) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FINALLY ORDERED** that Plaintiff's First Motion in Limine (Doc. 162) is **DENIED**. The Court will rule on Plaintiff's Second Motion in Limine (Doc. 163) at the Final Pretrial Conference.

Dated this 5th day of February, 2025.

Honorable Diane J. Humetewa
United States District Judge